**AFFIRMED; Opinion Filed December 19, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01601-CV

**J.C. PENNEY COMPANY, INC., MYRON E. ULLMAN III, MICHAEL T. THEILMANN, THOMAS M. NEALON, ROBERT B. CAVANAUGH, WILLIAM A. ACKMAN, THOMAS J. ENGIBOUS, GERALDINE B. LAYBOURNE, LEONARD H. ROBERTS, JAVIER G. TERUEL, MARY BETH WEST, COLLEEN C. BARRETT, KENT B. FOSTER, STEVEN ROTH, AND R. GERALD TURNER, Appellants**

**V.**

**EVERETT M. OZENNE, DERIVATIVELY ON BEHALF OF J.C. PENNEY COMPANY, INC., Appellee**

**On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-12-00735-L**

## OPINION

Before Justices Francis, Myers, and Thomas[1]
Opinion by Justice Myers

This case concerns an award of $3.1 million for the plaintiff's attorney's fees and expenses in a shareholder derivative action. The parties settled the suit and agreed that if the trial court awarded the plaintiff's attorneys their fees and expenses, that fee award "will compensate Plaintiff's Counsel for the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis."

---

[1] The Honorable Linda Thomas, Chief Justice (Ret.), Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

J.C. Penney Company, Inc., Myron E. Ullman III, Michael T. Theilmann, Thomas M. Nealon, Robert B. Cavanaugh, William A. Ackman, Thomas J. Engibous, Geraldine B. Laybourne, Leonard H. Roberts, Javier G. Teruel, Mary Beth West, Colleen C. Barrett, Kent B. Foster, Steven Roth, and R. Gerald Turner appeal the trial court's judgment awarding attorney's fees of $3.1 million to the attorneys of Everett M. Ozenne, the shareholder-plaintiff in the case. Appellants argue the trial court abused its discretion by awarding the attorney's fees, which were approximately 5.5 times the lodestar amount. We conclude appellants failed to show the trial court abused its discretion, and we affirm the trial court's judgment.

## BACKGROUND

J.C. Penney is a publicly traded corporation that is a major retailer in the United States with annual revenues in the tens of billions of dollars and net income in the hundreds of millions to billions of dollars. In January 2012, Ozenne brought this suit on behalf of J.C. Penney against the company's officers and directors. Ozenne's suit contended that J.C. Penney's officers received excessive compensation. In August 2012, the parties reached an agreement in principle to settle the action. On November 7, 2012, they executed a Memorandum of Understanding outlining the terms of their settlement agreement. In July 2013, the parties executed their Stipulation of Settlement. J.C. Penney agreed to corporate governance changes for four years, including how it compensated its "Section 16" corporate officers.[2] One of those changes was that J.C. Penney agreed to an Anti-Acceleration Term for the vesting of its officers' long-term incentive equity awards in the event the officer was terminated without cause. Previously, J.C. Penney had agreed with some officers that if the officer was terminated without cause, the

---

[2] "Section 16" refers to section 16 of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78p.

officer's unvested long-term incentive equity awards would vest immediately. J.C. Penney agreed that in any new termination agreements it entered into in the next four years with its officers, the agreements would provide that if an officer was terminated without cause, the vesting of the equity awards would be prorated based on the length of the officer's employment during the vesting period. Ozenne's lawyers' experts estimated the value of the Anti-Acceleration Term to J.C. Penney over the four years would average $15.5 million per year.

The Stipulation provided that the trial court would determine the attorney's fees and expenses to award Ozenne's lawyers "to compensate them for the benefits conferred upon JCP as a result of the Settlement, which application JCP may oppose." Attached as an exhibit to the Stipulation was an agreed notice to shareholders of the pendency of the derivative action and the proposed settlement. This exhibit was incorporated by reference into the Stipulation, and it stated the award of expenses and fees would compensate Ozenne's counsel "for the benefits conferred upon JCP as a result of the Settlement." The exhibit also observed that Ozenne's counsel had "not received any payments for their efforts on behalf of JCP stockholders," and it stated, "The Fee and Expense Award will compensate Plaintiff's counsel for the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis."[3]

Ozenne's lawyers requested an award of fees and expenses of $3.1 million. They also submitted evidence that if they charged an hourly rate, their fees would be $558,123.50 (the lodestar).[4] They also had unreimbursed expenses of $12,597.29. J.C. Penney opposed awarding

---

[3] The copy of the notice to shareholders attached to the Memorandum of Understanding stated the request for fees and expenses would not exceed "$_____." The notice actually mailed to shareholders stated the request for fees and expenses would not exceed $5 million.

[4] The lodestar method of determining attorney's fees is the number of hours worked multiplied by the prevailing hourly rates.

Ozenne's lawyers more than the lodestar and requested that Ozenne's lawyers be awarded no more than $400,000. After a hearing, the trial court awarded Ozenne's lawyers $3.1 million.

## ATTORNEY'S FEES

In its two issues, appellants contend the evidence is legally and factually insufficient to support the award of attorney's fees exceeding the lodestar of $558,123.50.

### Choice of Law

J.C. Penney is incorporated in Delaware and has its headquarters in Texas. The parties dispute whether Texas law or Delaware law should apply to the determination of the attorney's fees. Appellants assert Texas law applies, while Ozenne contends that Delaware law applies. The parties' Stipulation did not specify whether Texas or Delaware law would apply.

Section 21.562(a) of the Texas Business Organizations Code governs the choice of law in shareholder derivative suits. That statute states the proceedings are governed by the laws of the state where the company is incorporated, "except for Sections 21.555, 21.560, and 21.561, which are procedural provisions and do not relate to the internal affairs of the corporation." TEX. BUS. ORGS. CODE ANN. § 21.562(a) (West 2012). Section 21.561 concerns payment of expenses and includes attorney's fees. *See id.* § 21.561. We conclude section 21.562(a) requires Texas law to apply to the award of attorney's fees to Ozenne's lawyers.

### Standard of Review

In Texas, attorney's fees are not recoverable from an opposing party unless authorized by statute or contract. *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013). Section 21.561 of the business organizations code provides that in a derivative proceeding, the trial court "may" require the company to pay the expenses the plaintiff incurred, including attorney's fees, "if the court finds the proceeding has resulted in a substantial benefit to the . . . corporation." BUS. ORGS. § 21.561(b)(1).

In a shareholder derivative action, the attorney's fees award is left to the discretion of the trial court. *See Bass v. Walker*, 99 S.W.3d 877, 882–83 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The trial court abuses its discretion only when it acts without reference to any guiding rules or principles, that is, when it acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds for reversal, but the sufficiency of the evidence is a relevant factor in determining whether the trial court had sufficient evidence to exercise its discretion. *Icon Benefit Admins. II, L.P. v. Mullin*, 405 S.W.3d 257, 265 n.3 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]). We first consider whether the trial court had sufficient evidence upon which to exercise its discretion and then consider whether the trial court erred in its application of that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We determine whether the trial court, based on the elicited evidence, made a reasonable decision, that is, a decision that was neither arbitrary nor unreasonable. *Id.* A trial court does not abuse its discretion simply by deciding a matter differently than an appellate court would. *Downer*, 701 S.W.2d at 242. The appellate court may not substitute its own judgment for the trial court's judgment. *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

When a trial court makes no separate findings of fact and conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). We imply all findings of fact necessary to support the judgment that are supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). "[T]he judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence."

*Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977), *overruled on other grounds*, *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768 (Tex. 1989).

### Parties' Agreed Measure for Attorney's Fees

In this case, the parties agreed in the Stipulation that the settlement was of substantial benefit to J.C. Penney and its stockholders, and appellants do not dispute on appeal that the settlement conferred a substantial benefit. The parties, by contract (the Stipulation), altered the measure of attorney's fees the trial court could award under section 21.561 from the amount "incurred by a party" to compensation to Ozenne's lawyers "for the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis."

### Award of More than the Lodestar

Appellants argue that the award of more than the lodestar is unreasonable under Texas law for shareholder derivative cases where the suit does not result in a monetary fund.

In *General Motors Corp. v. Bloyed*, 916 S.W.2d 949 (Tex. 1996), the Texas Supreme Court observed there are two different methods for calculating attorney's fees in settlements of class actions: the lodestar method and the percentage method. The court stated the percentage method is used "when the value of the settlement is subject to reasonably clear estimation." *Id.* at 960. The supreme court stated it did not dictate which method should be used in awarding attorney's fees on the settlement of a class action. The supreme court left that decision "to the sound discretion of the trial court." *Id.* at 960–61. In *General Motors*, the trial court awarded plaintiffs' counsel attorney's fees of $9 million, which was less than ten percent of the value of the settlement based on the affidavits submitted to the court. *Id.* at 960. Because the supreme court remanded the case to the trial court due to inadequate notice to the class, the supreme court did not address the reasonableness of the fees awarded. However, the court stated that "any fee awarded on a percentage basis should be tested against the lodestar approach to prevent grossly

excessive attorney's fee awards and to minimize the inherent conflict between class counsel and the class members." *Id.* at 961.

The lodestar method is "the number of hours worked multiplied by the prevailing hourly rates." *El Apple I v. Olivas*, 370 S.W.3d 757, 759 (Tex. 2012); *Gen. Motors*, 916 S.W.2d at 960.

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*El Apple*, 370 S.W.3d at 760 (citations omitted). *El Apple* was a case under the Texas Commission on Human Rights Act (TCHRA) and was not a class action. However, the supreme court looked to rule of civil procedure 42(i)(1), which concerns attorney's fees in class actions. That rule provides that the court must first determine the lodestar amount, and that the attorney's fees awarded "must be in the range of 25% to 400% of the lodestar figure." TEX. R. CIV. P. 42(i)(1). The supreme court stated that although rule 42(i)(1) did not apply to a case under the TCHRA, "the lodestar method should not vary from claim to claim, that is, the formula should be the same in TCHRA suits as in class actions." *El Apple*, 370 S.W.3d at 764. The court stated that "the lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar." *Id.* at 765.

Appellants argue that the lodestar is the presumptively reasonable fee and that the trial court could not apply a multiplier enhancing the lodestar unless exceptional circumstances existed justifying the higher award. The record does not show the trial court considered the lodestar amount and then applied a multiplier to it. Instead, the record simply shows the trial court awarded attorney's fees of $3.1 million. The trial court did not explain its reasons for awarding that amount, and appellants did not request findings of fact and conclusions of law.

Appellants assert that in this case, no exceptional circumstances exist for an award in excess of the lodestar, and that the trial court erred by awarding fees 5.5 times the lodestar amount.[5]  If the lodestar method was the basis for the award of attorney's fees in this case, either under the statute or the parties' agreement, then appellants' argument might be well taken. However, the parties did not agree that the lodestar would be the basis of the attorney's fee award, and they agreed on a different measure:  "the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis."  This measure has no relation to the lodestar method, and we conclude the lodestar method is not relevant to the determination of attorney's fees under this agreed measure.  None of the cases appellants cite in support of the argument that the attorney's fee award should be limited to the lodestar involved an agreement to measure the fees by this different standard.  Accordingly, none of those cases are applicable to this proceeding.

Appellants also cite *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812 (Tex. 1997).  The issues in that case included a jury question about attorney's fees in a DTPA case. *Id.* at 818.  The plaintiff's attorney had a contingent-fee agreement with the plaintiff.  The jury was asked to determine the attorney's fees (1) in dollars and cents, (2) as a percentage of the total recovery, and (3) in dollars and cents and as a percentage of recovery.  *Id.* at 817 n.4.  The supreme court stated that when attorney's fees are submitted to a jury in a DTPA case, the plaintiff must prove the amount of fees "reasonably incurred and necessary to the prosecution of the case," and the jury question "must ask the jury to award the fees in a specific dollar amount,

_____

[5] Throughout their briefs, appellants repeatedly refer to the attorney's fees award as "550% of lodestar, including, "By granting the $3.1 million in fees, the trial court implicitly determined that it was 'reasonable' to apply a 550% enhancement to Plaintiff's claimed lodestar."  The record does not show such "implicit[]" determination by the trial court.  Instead, the record shows only that the trial court determined that a fee of $3.1 million was a reasonable fee in this case.

not as a percentage of the judgment." *Id.* at 819. However, the case before us concerns an award of fees measured by a contractual settlement provision, not a jury trial on a consumer-protection statutory remedy. We conclude *Arthur Andersen* is distinguishable and not applicable to the case before us.[6]

Appellants also cite Delaware cases. In shareholder actions, the Delaware courts have discretion to award attorney's fees. *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1255 (Del. 2012). The courts consider:

> (i) the amount of time and effort applied to the case by counsel for the plaintiffs; (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred.

*In re Sauer-Danfoss Inc. Shareholders Litig.*, 65 A.3d 1116, 1135-36 (Del. Ch. 2011). The Delaware courts place the greatest weight on the benefits achieved by the litigation. *Id.* at 1136. To guard against windfalls, particularly in therapeutic-benefit cases, the courts consider the time expended by counsel. *Id.* Appellants also cite cases where the parties had agreed to an award of fees to the plaintiff's counsel, but the trial court reduced the amount. *See Friedman v. Baxter*

---

[6] In their reply brief, appellants also cite to and selectively quote from *Arthur Andersen* as follows:

> In particular, Plaintiff would have this Court avoid Supreme Court of Texas precedent in the very case plaintiff previously cited: A fact finder may not "speculate about whether a percentage" of recovery is a reasonable fee and must instead award an amount "in light of the work performed." *See Arthur Andersen*, 945 S.W.2d at 819.

As set forth by appellants, it would appear the supreme court has prohibited trial courts ("[a] fact finder") from ever awarding attorney's fees under the percentage method. However, the full quotation shows the supreme court had no such intention:

> [B]ecause the jury is not informed what the total amount of the judgment will be, the jury can only speculate about whether a percentage of that unknown recovery will represent a reasonable and necessary fee in that particular case. Rather than leave this question to speculation, the jury must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought.

*Arthur Andersen*, 945 S.W.2d at 819. In context, it is clear that the supreme court meant that a *jury* cannot be asked to award a percentage of an *unknown* recovery as attorney's fees because the jury cannot determine the reasonableness of those fees when it does not know the size of the recovery to which the percentage would be applied. Instead of leaving the jury to speculate, the supreme court decided that a jury in that situation must determine the award of attorney's fees based on the work performed in the case and not as a percentage of an unknown recovery. This portion of the *Arthur Andersen* opinion has no application to a case where the *trial court* is awarding attorney's fees as a percentage of a *known* value of a settlement, particularly when the parties have agreed that the attorney's fees will compensate the plaintiff's attorneys for that value.

*Travenol Labs., Inc.*, No. Civ. A. 8209, 1986 WL 2254, *3–5 (Del. Ch. Feb. 18, 1986) (court reduced unopposed attorney's fees request from $385,000 to $200,000).[7] However, these cases demonstrate the discretion of the trial court in awarding attorney's fees; they do not demonstrate that the agreed fees were unreasonable as a matter of law. Moreover, the cases appellants cite also involved requests for attorney's fees based on Delaware law, not attorney's fees based on a contractual provision that varied from Delaware statutory or common law. Appellants do not cite a Delaware case where a trial court's award of attorney's fees was held on appeal to be an abuse of discretion.

Appellants also assert the lodestar should be the measure for the attorney's fees because the litigation required relatively little effort from Ozenne's lawyers, the benefits from the settlement were nonmonetary, and there was no evidence that the lodestar was not a reasonable fee. Those assertions might support an argument that the trial court would not have abused its discretion by awarding the lodestar, but they do not show the trial court abused its discretion by awarding a higher amount, particularly when the parties agreed to a measure for attorney's fees not based on the lodestar.

Appellants also argue that Ozenne's attorneys should receive the lodestar because Ozenne's case was weak and he was unlikely to prevail absent the settlement. *See In re Triton Group Ltd. S'holders Litig.*, No. Civ. A. 11429, 17 Del. J. Corp. L. 372, 389, 1991 WL 36471 (Del. Ch. Feb. 22, 1991); *Sullivan v. Hammer*, No. Civ. A. 10823, 16 Del. J. Corp. L. 1621, 1635, 1990 WL 114223 (Del. Ch. Aug. 7, 1990). However, appellants agreed that Ozenne's

---

[7] Besides the opinion in *Friedman*, appellants cited to the reporter's record of a hearing in *Louisiana Municipal Police Employee's Retirement System v. Titanium Metals Corp.*, CA. No. 7059-CS, Settlement Hr'g (Del. Ch. Jan. 9, 2013). The hearing in Delaware chancery court was on a request for approval of a settlement agreement and for attorney's fees in a shareholder class action. The defendant agreed to pay plaintiffs' attorneys a fee of $1 million, which was two times the lodestar. However, the trial court concluded the lodestar was "generous," and the court awarded only the lodestar.

lawyers would be compensated "for the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis." The likelihood of Ozenne to succeed if the case had gone to trial is not relevant to this determination.

Appellants agreed in the Stipulation that the award of expenses and attorney's fees "will compensate" Ozenne's attorneys "for the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis." Appellants cannot now argue that standard is inappropriate and that the lodestar should be the measure for attorney's fees. If appellants wanted to limit the fees paid Ozenne's attorneys to the lodestar, they should not have agreed to a measure other than the lodestar.

### Reasonableness of $3.1 Million Award of Fees and Expenses

Having concluded the trial court was not limited to the lodestar in determining the award of fees and expenses, we turn to whether the $3.1 million award was an unreasonable award to compensate Ozenne's attorneys for "the results achieved in the Action and the risks of undertaking the prosecution of the Action on a contingent basis" constituting an abuse of discretion.

In their original motion for an award of attorney's fees, Ozenne's lawyers asserted the value of the settlement was $58 million at the time of the Memorandum of Understanding, and they requested seven percent of that amount, $4 million. Appellants responded that the experts considered officers who were not employed by J.C. Penney at the time of the Memorandum of Understanding, so the $58 million valuation was excessive. The experts revised their valuation to an average of $15.5 million for the preceding four years, and Ozenne's attorneys requested that the court award them twenty percent of $15.5 million, which was $3.1 million. Appellants criticize Ozenne's lawyers for increasing the percentage when they realized the value was

–11–

smaller, but appellants have not presented any authority that an award of twenty percent would constitute an abuse of discretion.

Ozenne's lawyers did not seek to quantify the value of the settlement's terms other than the Anti-Acceleration Term. However, that provision was difficult to value because its value depended on future events—how many Section 16 officers J.C. Penney hires in the four years after the settlement, the amount of the equity awarded to those officers, and whether and when they would be terminated without cause. To prove the potential value of the Anti-Acceleration Term, Ozenne's experts provided a "snapshot" of a four-year period, the four years preceding the parties' agreeing to settle, that is, 2009 to 2012. For that period of time, Ozenne's lawyers presented evidence of the number of officers J.C. Penney had and the value of their unvested equity awards J.C. Penney would have to accelerate if they were terminated without cause. Ozenne's lawyers presented evidence that J.C. Penney's section 16 officers had unvested equity awards of approximately $18 million in 2009, $27 million in 2010, $9 million in 2011, and $8 million in 2012, for an average of approximately $15.5 million per year.

Appellants attack Ozenne's lawyers' experts' calculations. Appellants argue there is no evidence that J.C. Penney would hire and terminate four section 16 officers who had the right to acceleration of unvested equity awards during the four years following the settlement. The evidence before the trial court showed that in 2009, J.C. Penney had four section 16 officers with acceleration agreements. The evidence showed that by 2012, those four officers had been terminated and there were three other officers with accelerated vesting agreements. The evidence also showed that J.C. Penney had four officers with accelerated vesting agreements in 2009, six officers in 2010, four officers in 2011, and three officers in 2012, for an average of about four officers per year with accelerated vesting agreements. From this evidence, the trial court could conclude that J.C. Penney historically had about four officers with accelerated

vesting agreements and that it would terminate them within four years.  J.C. Penney presented no evidence that this information was an inaccurate historical "snapshot" of J.C. Penney's compensation and termination practices.  Nor did J.C. Penney present any evidence that this historical snapshot was not predictive of J.C. Penney's future hiring and termination practices or of its compensation practice absent the Anti-Acceleration Term.

J.C. Penney also asserts Ozenne's lawyers' experts' valuation of the Anti-Acceleration term failed to consider the potential benefits of accelerated vesting.  In support of this argument, J.C. Penney cites *Louisiana State Employees' Retirement System v. Citrix Systems, Inc.*, No. Civ. A. 18298, 2001 WL 1131364 (Del. Ch. Sept. 17, 2001).  That case concerned a shareholder class action in opposition to a proposal to increase the shares available to employees in the company's stock options plan.  *Id.* at *1.  During the litigation, Citrix agreed to withdraw the proposal and not increase the stock options.  The plaintiffs sought attorney's fees based on the value of the proceeding to the company, and they valued the withdrawal of the stock options increase at $183 million.  The trial court criticized the plaintiffs' valuation on several grounds, including that it "remains fatally flawed because it ignores any *benefits* that may have accrued to the Citrix stockholders due to" the proposal.  *Id.* at *7.  In that case, the company asserted that its stock options attracted and retained employees while minimizing the cash compensation paid to the employees.  The company presented evidence that its employee turnover rate was well below the average of its peer companies, while its cash compensation was in the 25th to 50th percentile of its peers.  *Id.*  In light of this evidence of the benefit of the proposal, the trial court concluded that the plaintiffs' failure to account for the benefit in their valuation of the withdrawal of the proposal created an incomplete economic valuation of the withdrawal.  *Id.*  Ultimately, the trial court awarded the plaintiffs an attorney's fee based on the work involved and the risk of a contingent fee instead of the value to the company of the litigation.  *Id.* at *10.  The facts of

–13–

*Citrix* are distinguishable because Citrix presented evidence of the benefits of the stock options proposal, including the low turnover rate of its employees. In this case, appellants do not explain how the accelerated vesting of equity awards in the event of termination without cause could help J.C. Penney retain its officers; the officers only receive this benefit if they are terminated without cause, in which case, their retention is no longer relevant or desired by J.C. Penney.[8]

Ozenne's lawyers presented some evidence that the value of the settlement was $15.5 million per year for four years. Thus, the trial court could have determined that the total value of the Anti-Acceleration Term was $62 million. The trial court's award of $3.1 million was five percent of the $62 million.

Ozenne's lawyers presented evidence of fee awards in cases brought by shareholders where the cases settled with an agreement to reform corporate governance and without creating a monetary fund. *See, e.g.*, *Warner v. Lesar*, No. 2011-09567, Order Approving Settlement and Judgment, (Tex. Dist. Ct. Harris Cnty. Oct. 1, 2012) (finding all provisions of settlement were reasonable and awarding fees and expenses of $7.75 million); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794 RSL, Order and Final Judgment (W.D. Wa. Jan. 6, 2011) (finding fee award of $5 million to plaintiffs fair and reasonable); *City of Pontiac Gen. Employees' Retirement Sys. v. Langone*, No. 2006-cv-122302, Findings of Fact in Support of Order and Final Judgment (Ga. Sup. Ct., Fulton Cnty., June 10, 2008) (award of fees and expenses of $14.5 million and finding award was reasonable and that plaintiffs' counsel took the case on a contingent basis). In those cases cited by Ozenne's lawyers, the plaintiffs' lawyers were awarded more than $3.1 million.

---

[8] Appellants also cite *Chrysler Corp. v. Dann*, 223 A.2d 384, 388 (Del. 1966). That case concerned approval of a shareholder action complaining of an employee incentive stock options plan. Although the nature of the plan is not set forth in the opinion, the Delaware Supreme Court stated that the plan "was a long-range benefit to Chrysler in aiding it to acquire and retain highly qualified personnel in a very competitive industry." Appellants do not explain how the acceleration-on-termination provision in certain officers' agreements allowed J.C. Penney "to acquire and retain highly qualified personnel" when the benefit would not take effect unless the officer was terminated without cause.

Ozenne's lawyers also presented evidence of the fees courts awarded plaintiffs' lawyers in cases where there was a definite monetary value as well as corporate governance reforms. The attorney's fees awarded in those cases exceeded the proportion of the award of fees in this case. *See In re Juniper Derivative Actions*, No. 5:06-cv-03396-JW, Order and Final Judgment (N.D. Cal. Nov. 13, 2008) (finding terms of stipulation of settlement fair and reasonable including attorney's fees; stipulation provided for cash benefit of $22.7 million plus corporate governance reforms and attorney's fees and expenses of $9 million [40 percent]); *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, *2, *4, Order (1) Granting Final Approval of Settlement; (2) Approving Agreement For Payment of Attorney's Fees and Expenses; and (3) Addressing Shareholder Objections (N.D. Cal. Nov. 5, 2008) (cash payment of $14 million and corporate governance changes; court found attorney's fees award of $8.85 million [63 percent] reasonable; court observed that if the corporate governance reforms were worth $10 million, the award of fees would be 37 percent). Appellants criticize reliance on these settlements because the defendants in those cases did not oppose the awards of attorney's fees. However, the courts made findings in those cases that the fee awards were reasonable.

We conclude appellants failed to show that no evidence or factually insufficient evidence supported the trial court's award to Ozenne's lawyers of expenses and attorney's fees of $3.1 million. The trial court's determination was supported by evidence and was not arbitrary or unreasonable. Even if other courts might have determined the award of fees and expenses differently, that does not mean the trial court abused its discretion. *See Downer*, 701 S.W.2d at 241–42. We overrule appellants' issues.

**CONCLUSION**

We affirm the trial court's judgment.

<table>
<tr><td></td><td>/Lana Myers/</td></tr>
<tr><td></td><td>LANA MYERS</td></tr>
<tr><td>131601F.P05</td><td>JUSTICE</td></tr>
</table>



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

J.C. Penney Company, Inc., Myron E. Ullman III, Michael T. Theilmann, Thomas M. Nealon, Robert B. Cavanaugh, William A. Ackman, Thomas J. Engibous, Geraldine B. Laybourne, Leonard H. Roberts, Javier G. Teruel, Mary Beth West, Colleen C. Barrett, Kent B. Foster, Steven Roth, and R. Gerald Turner,                Appellants

No.   05-13-01601-CV

Everett M. Ozenne, Derivatively on Behalf of J.C. Penney Company, Inc., Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-00735.
Opinion delivered by Justice Myers. Justices Francis and Thomas participating.

V.

In accordance with this Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.


It is **ORDERED** that appellee Everett M. Ozenne, Derivatively on Behalf of J.C. Penney Company, Inc. recover his costs of this appeal from appellants J.C. Penney Company, Inc., Myron E. Ullman III, Michael T. Theilmann, Thomas M. Nealon, Robert B. Cavanaugh, William A. Ackman, Thomas J. Engibous, Geraldine B. Laybourne, Leonard H. Roberts, Javier G. Teruel, Mary Beth West, Colleen C. Barrett, Kent B. Foster, Steven Roth, and R. Gerald Turner.

Judgment entered this 19th day of December, 2014.