Daniel J. ROCKER, Appellant

v.

CENTEX CORPORATION, Timothy R. Eller, Barbara T. Alexander, Ursula O. Fairbairn, Matthew K. Rose, James J. Postl, David W. Quinn, Frederic M. Poses, Thomas M. Schoewe, Thomas J. Falk, Clint W. Murchison III, Pulte Homes, Inc., Barry Roseman, D.M.D. and Laurie Jacobs, D.M.D. Profit Sharing Trust, Julie Praytor, Gale Hanson, and Colleen Witmer, Appellees.

No. 05–10–00903–CV.

Court of Appeals of Texas, Dallas.

Aug. 10, 2012.

Rehearing Overruled Sept. 12, 2012.

Jeffrey L. Weinstein, Jeffrey L. Weinstein P.C., Athens, TX, D.J. Powers, Law Offices of D.J. Powers, Austin, TX, for Appellant.

Roger F. Claxton, Claxton & Hill, Michael A. Swartzendruber, Kristin R. Turner, Fulbright & Jaworski L.L.P., Steven C. Malin, Sidley Austin, LLP, Dallas, TX, Kenneth Jerome Vianale, Vianale & Vianale LLP, Boca Raton, FL, William Savitt,

Wachtell, Lipton, Rosen & Katz, New York, NY, James W. Ducayet, Sidley Austin LLP, Chicago, IL, for Appellees.

Before Justices MOSELEY, FITZGERALD, and MARTIN RICHTER.

## OPINION

Opinion By Justice MARTIN RICHTER.

■ Daniel J. Rocker appeals the trial court's order and final judgment certifying a class and approving the settlement of a lawsuit arising out of the merger of Centex Corporation and Pulte Homes, Inc. Where a settlement implicates damage claims, constitutional considerations require that putative class members be granted the right to opt out of the class. *Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 667 (Tex.2004). Because the trial court's order did not grant that right, we reverse the trial court's judgment and remand the cause for further proceedings.

In addition, the trial court's judgment awarded attorney's fees in cash to class counsel without determining the value and proportion of the "noncash common benefits" recovered for the class, as required by both statute and rule. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(b) (West 2008) *and* TEX.R. CIV. P. 42(i)(2). For this reason, we reverse the trial court's award of attorney's fees to class counsel and remand for the trial court's consideration of this issue.

### BACKGROUND

On April 15, 2009, appellee Barry Roseman, D.M.D. and Laurie Jacobs, D.M.D. Profit Sharing Trust (the Trust) filed a class action on behalf of itself and other similarly situated shareholders of appellee Centex Corporation. The Trust sought "injunctive and other appropriate relief"

for itself and the putative class in connection with the proposed acquisition of Centex by Pulte Homes Inc. "through a stock-for-stock merger in which Centex shareholders will receive 0.975 shares of Pulte common stock for each share of Centex they own." The Trust alleged that the amount Pulte proposed to pay was "unfair and inadequate." It further alleged that the members of Centex's board of directors (defendants/appellees Timothy R. Eller, Barbara T. Alexander, Ursula O. Fairbairn, Thomas J. Falk, Clint W. Murchison, III, Frederic M. Poses, James J. Postl, David W. Quinn, Matthew K. Rose, and Thomas M. Schoewe), had breached their fiduciary duties "by agreeing to accept a consideration for the shares of Centex that is substantially less than their value." The Trust alleged that it and other class members "have suffered damages because they will only receive 0.975 shares of Pulte common stock for each of their Centex shares, an amount substantially less than the value of plaintiff's and other class members' Centex shares." The Trust pleaded that the class be certified under Rule 42, Texas Rules of Civil Procedure, and requested both injunctive relief and damages. The Trust requested that the trial court enjoin the merger, and also pleaded that if the proposed merger was consummated and not rescinded, the trial court award "rescissory damages to the Class."

Soon after, appellees Gale Hanson, Julie Praytor, and Julie Wittmer each filed putative class action petitions regarding the merger, which were consolidated on June 1, 2009 with the action filed by the Trust. (For clarity, we refer to appellees Hanson, Praytor, Wittmer, and the Trust as Plaintiffs, and the remaining appellees as Defendants.) On June 22, 2009, an amended petition was filed adding more detailed class allegations as well as a claim against

Centex and Pulte for aiding and abetting breaches of fiduciary duty by the director defendants. The amended petition included complaints regarding the scope and content of financial analyses of the merger conducted by Goldman Sachs & Co. Only injunctive relief was sought in this petition.

In mid-June, the parties began discussing the possibility of settlement. The parties reached an agreement incorporated in a Memorandum of Understanding dated July 17, 2009. In the Memorandum, Centex and Pulte agreed to disclose additional material information about the merger and Goldman Sachs's analysis in exchange for the Plaintiffs' agreement not to seek to enjoin shareholder meetings to be held to vote on the merger. As described by the Plaintiffs, the settlement required Centex "to make additional, material disclosures in the final proxy statement sent to Centex shareholders soliciting their vote of approval for the merger with Pulte." These disclosures were referred to in the settlement documents as the "Supplemental Disclosures." Cynthia I. Jones, Plaintiffs' financial expert, described the Supplemental Disclosures as "provid[ing] a more complete foundation for shareholders to assess the veracity of the process through which the Merger Agreement was reached; the reasonableness of the factors considered in the Boards' recommendations for the transaction; and the reasonableness and accuracy of the analyses and factors considered by Goldman Sachs in issuing its fairness opinion." The Supplemental Disclosures were included in the final proxy/prospectus, and the shareholders of Pulte and Centex approved the merger at special shareholder meetings held on August 18, 2009.

Plaintiffs conducted discovery on the fairness of the settlement. On January 11, 2010, the parties signed a detailed Stipulation and Agreement of Settlement with exhibits, which they filed in the trial court. The agreement provided that the Supplemental Disclosures were exchanged in consideration for "the full settlement and release of all Settled Claims" as defined in the agreement. Although the amended petition requested only injunctive relief, the agreement included an extremely broad release by class members of all known and unknown claims for damages.

Notice of the proposed settlement was sent to all members of the putative class. Appellant Rocker, a member of the putative class, filed objections. After a hearing, the trial court overruled Rocker's objections, approved the settlement, and certified the settlement class in a judgment dated June 12, 2010. The trial court's judgment also awarded $1.1 million in cash fees to class counsel and $750 to each named plaintiff. This appeal followed.

## Issues Presented

Rocker asserts seven issues. First, he contends the trial court erred in awarding attorney's fees in cash to class counsel. Second, Rocker argues the trial court erred by approving the settlement because it was not in the best interest of the class. Third, he complains that there was no present consideration given for the release of class members' claims. Fourth, Rocker contends that although the trial court found that injunctive relief was appropriate for the class, none was granted.[1] Fifth, Rocker complains that the trial court erred by not granting class members the right to opt out of the class. Sixth, he

1. In his reply brief, Rocker asserts that he "withdraws his Issue No. 4." We therefore do not consider issue number four further.

argues that the trial court erred by certifying the class under Rule 42(b)(2), Texas Rules of Civil Procedure, because the judgment did not include any injunctive or declaratory relief. Seventh, Rocker contends that because the trial court did not identify any incompatible standards of conduct that would be imposed on the Defendants, certification under Rule 42(b)(1) was improper.

## STANDARDS OF REVIEW

■■■■ Approval of a class action settlement is within the sound discretion of the trial court and should not be reversed absent an abuse of that discretion. *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In reviewing the trial court's judgment, the appellate court "must not merely substitute its judgment for that of the trial court." *Bloyed*, 916 S.W.2d at 955.[2] Although we review certification of a settlement class for an abuse of discretion, we do not indulge every presumption in favor of the trial court's order. *Lapray*, 135 S.W.3d at 671 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex.2002)). Compliance with class action requirements must be demonstrated rather than presumed. *Id.*

■■■■ The trial court determines if a class action settlement is fair, adequate, and reasonable. *Bloyed*, 916 S.W.2d at 955 (citing TEX.R. CIV. P. 42(e)). In *Bloyed*,

the court described the factors a trial court should consider in determining whether to approve a proposed class action settlement:

(1) whether the settlement was negotiated at arms' length or was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings, including the status of discovery; (4) the factual and legal obstacles that could prevent the plaintiffs from prevailing on the merits; (5) the possible range of recovery and the certainty of damages; (6) the respective opinions of the participants, including class counsel, class representatives, and the absent class members. Put another way, the trial court must examine both the substantive and procedural aspects of the settlement: (1) whether the terms of the settlement are fair, adequate, and reasonable; and (2) whether the settlement was the product of honest negotiations or of collusion. Those defending the settlement must show that the evidence related to these factors supports approval of the settlement.

*Id.* (citations omitted). The *Bloyed* court also emphasized that the prerequisites of a class action set forth in Rule 42 "must always be met, even when cases are settled before certification of a class." *Id.* at 954.

■■■■ In this appeal, we must also construe a statute. The interpretation of a statute is a legal question, and we review the trial court's construction of a statute de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex.2009). Our objective is to ascertain and give ef-

---

**2.** Also, we note that in our analysis of Texas Rule of Civil Procedure 42, we are guided by analysis of Federal Rule of Civil Procedure 23, from which Rule 42 was derived. *Bloyed*, 916 S.W.2d at 954 n. 1 (citing 1 McDONALD, TEXAS CIVIL PRACTICE § 5:54, at 567 n. 445

(1992)). And as noted in *Lapray*, Texas Rule 42(b)(2) "derives from its federal parallel, Rule 23(b)(2), and reads identically." *Lapray*, 135 S.W.3d at 664 (citing TEX.R. CIV. P. 42 historical note).

fect to the legislature's intent. *Id.* at 437. Statutes must be construed as written and legislative intent determined, if possible, from their express terms. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001). If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008).

## DISCUSSION

At the outset we note that absent the statutory interpretation issue of first impression and the due process question raised by the breadth of the release, we would have no difficulty in affirming the trial court's approval of the parties' class action settlement. Plaintiffs and Defendants offered evidence from which the trial court could find that the settlement met the requirements of Rule 42 and *Bloyed,* and the trial court "acted with reference" to those "guiding principles." *See Downer,* 701 S.W.2d at 241–42.

### 1. *Bloyed* factors

The trial court's order and final judgment recites that "[t]he Court hereby approves the Stipulation and the Settlement as, in all respects, fair, reasonable and adequate to the Settlement Class, and in the best interest of the Class, under rule 42 of the Texas Rules of Civil Procedure." Rocker argues that the settlement is unfair because the Plaintiffs' lawyers "settled for a judgment that provides no benefits whatsoever for class members, but a hefty fee for the lawyers." Rocker contends that the Defendants received the benefit of a complete release from all claims, class counsel received attorney's fees of $1.1 million, and the class representatives received $750 each, while "the judgment provided nothing to class members: no money, no coupons, no injunction, no equitable relief, and no declaration of their rights against the Defendants; absolutely nothing."

■■■■ The trial court's order approving the settlement does not include findings regarding the six factors identified in *Bloyed* to be considered in determining whether a settlement is fair, adequate, and reasonable, *see Bloyed,* 916 S.W.2d at 955, and Rocker does not specifically attack any one of the six factors. With their motion to approve the settlement, however, Plaintiffs included evidence and argument on each of the six *Bloyed* factors, and discussed several of the factors at the hearing on the motion. We conclude that the record supports an implied affirmative finding on each of the six *Bloyed* factors.

Regarding the first three factors, arms' length negotiations resulted in the settlement of complex and potentially expensive litigation after the parties conducted sufficient discovery to evaluate the merits of the case. The settlement was reached only after the Plaintiffs filed their consolidated class action petition seeking to enjoin the merger. The consolidated petition contained much more detailed criticisms of the proposed merger and the directors' alleged breaches of fiduciary duty than had been included in the original petition. Plaintiffs alleged that the Centex directors agreed to sell the company for an unfairly low price, with no premium for Centex shareholders, and gave detailed reasons why a premium was appropriate. Plaintiffs also alleged that the directors conducted an "unfair process" leading to the merger. This process included retaining Goldman Sachs, which had an alleged conflict of interest from providing services to Pulte, to render an opinion regarding the fairness of the share exchange ratio Pulte was to pay for Centex shares. Plaintiffs further alleged that the directors had en-

gaged in self-dealing by using inside information to profit from the proposed merger. Plaintiffs also complained that Defendants failed to disclose material information to shareholders about the merger in the Form S–4 filed with the Securities and Exchange Commission, pointing out specific deficiencies in the analyses of the merger that were included in the Form.

The Supplemental Disclosures, a product of the settlement negotiations, addressed these alleged deficiencies by providing additional information about the process leading to the merger. Plaintiffs submitted the declaration of their expert witness who concluded that the Supplemental Disclosures "provided a more complete foundation for shareholders to assess the veracity of the process through which the Merger Agreement was reached; the reasonableness of the factors considered in the Boards' recommendations for the transaction; and the reasonableness and accuracy of the analyses and factors considered by Goldman Sachs in issuing its fairness opinion." Plaintiffs conducted discovery, reviewing "thousands of pages of public and non-public documents," consulting an expert, and deposing the chairman of Centex as well as another Centex director and a financial advisor from Goldman Sachs. There is nothing in the record to indicate that these proceedings were the result of collusion among the Plaintiffs, class counsel, or Defendants. While there is no evidence of significant dispute between Plaintiffs and Defendants regarding the amount of attorney's fees to be awarded class counsel, and Defendants agreed as part of the settlement not to dispute the fees sought by class counsel, Plaintiffs submitted evidence from which the trial court could evaluate the reasonableness and necessity of the fees sought.

Regarding the fourth and fifth *Bloyed* factors, the parties described significant legal obstacles to prevent Plaintiffs from prevailing on the merits and reduce the possible range of recovery. The parties agreed that Nevada law would apply to determine the liability of Centex's directors for breach of fiduciary duty because Centex is a Nevada corporation. Under Nevada law, the parties argued, there would be no cause of action against the Centex directors for breach of fiduciary duty unless the breach involved "intentional misconduct, fraud or a knowing violation of the law." *See* Nev.Rev.Stat. § 78.138(7) (West, Westlaw through 76th Reg. Sess.2011). Further, the Centex directors were entitled to rely on reports by financial advisers such as Goldman Sachs on matters the directors reasonably believed were within the advisers' expertise. *See id.* § 78.138(2).

Finally, as to the sixth *Bloyed* factor, the participants in the settlement supported its approval, with the exception of Rocker. As noted above, the parties conducted discovery sufficient to evaluate the merits of the case. Based on this discovery as well as legal research and consultation with financial experts, class counsel represented to the trial court that the Supplemental Disclosures were valuable and the best relief available to the class. Notice of the proposed settlement was given to more than 45,000 shareholders, but only Rocker, who owned .00008% of the company's stock, objected. *See Ball v. Farm & Home Sav. Ass'n,* 747 S.W.2d 420, 424 (Tex.App.-Fort Worth 1988, writ denied) ("While a court should be hesitant to infer that a class supports a settlement merely because its members are silent at a hearing, where silence is coupled with other indicia of fairness, it provides further support for approval.").

As noted above, we conclude that the record supports an affirmative finding on each of the six *Bloyed* factors. Rocker's issues on appeal, however, do not fit neatly into the *Bloyed* categories. His criticisms of the settlement agreement are threefold: 1) there was no present consideration given for the release of claims; 2) the settlement class could not be certified under either Rule 42(b)(1) or Rule 42(b)(2); and 3) the award of attorney's fees was error. We address these arguments in turn.

### 2. Consideration

In his third issue, Rocker asserts that there was no consideration for class members' releases because the Supplemental Disclosures were a past act, not present consideration. In his second issue, Rocker contends that class members were required to release their claims against Defendants but received nothing of value in exchange. We conclude there was present consideration for the Settlement Agreement. "Consideration is a bargained for exchange of promises." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex.2008) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex.2001)). The *Ulico* court continued, "[c]onsideration consists of benefits and detriments to the contracting parties. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments." *Id.* Here, the promises were exchanged and the consideration given when the parties entered into the Memorandum and the settlement agreement, not when the trial court granted its approval. *See Terrazas v. Ramirez*, 829 S.W.2d 712, 719 (Tex.1991) (citing *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir.1981) (en banc) (noting a court's responsibility in

approving settlements of class actions is "merely the ratification of a compromise")); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir.2010) (rejecting argument that settlement is not a binding contract until final judicial approval). Under the Settlement Agreement, Centex and Pulte agreed to provide the Supplemental Disclosures. The parties offered evidence that the Supplemental Disclosures provided more detailed, material information concerning the proposed merger and its fairness prior to the shareholder vote on the merger. In exchange, class members released claims. This exchange of promises was present consideration for the Settlement Agreement. *See Ulico Cas. Co.*, 262 S.W.3d at 790. We overrule Rocker's second and third issues.

### 3. Certification under Rule 42(b)(1) and 42(b)(2)

As noted above, under *Bloyed*, when approving the settlement, the trial court was also required to determine whether the prerequisites of a class action set forth in Rule 42 were met. *See Bloyed*, 916 S.W.2d at 954. Rocker does not challenge any of the requirements of Rule 42(a). In his fifth, sixth, and seventh issues, however, he asserts several arguments regarding the propriety of certification under Rule 42(b).

In his seventh issue, Rocker argues that because the trial court did not identify any incompatible standards of conduct that would be imposed on the defendants, certification under Rule 42(b)(1)(A) was improper. Rule 42(b)(1)(A) provides that an action may be maintained as a class action if "the prosecution of separate actions by . . . individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect

to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Rocker correctly argues that Rule 42(b)(1)(A)'s requirement of "inconsistent or varying adjudications" is not met by a showing that in individual litigation by class members, "some may win and some may lose." *See Henry Schein, Inc.,* 102 S.W.3d at 691. But where a party is obliged by law to treat all class members alike, Rule 42(b)(1)(A) may apply; inconsistent adjudications could otherwise prevent the party from acting in the same manner toward individual class members. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (Rule 23(b)(1)(A) applies to cases where the party is obliged by law to treat the members of the class alike); *In re Schering–Plough/Merck Merger Litig.,* No. 09–CV–1099 (DMC), 2010 WL 1257722, at *8 (D.N.J. Mar. 26, 2010) (not designated for publication) (court agrees that individual suits "will likely result in disparate treatment" where corporation owes duty of uniform treatment to shareholders under securities laws; therefore, Rule 23(b)(1)(A) applies). We overrule Rocker's seventh issue.

■ In his sixth issue, Rocker contends that certification under Rule 42(b)(2) was improper because the trial court's judgment did not include any injunctive or declaratory relief for the class. Rule 42(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rocker argues that "Plaintiffs no longer requested injunctive relief once they entered the settlement agreement," citing *Fleming v. Allstate Ins. Co.,* No. 03–

09–00705–CV, 2010 WL 4137502 (Tex. App.-Austin Oct. 22, 2010, pet. denied) (mem. op.). In *Fleming,* the plaintiff and putative class representative amended her pleadings to withdraw her claim for injunctive relief after the Texas Supreme Court, in a related case, rejected the claim on its merits. *See Fleming,* 2010 WL 4137502, at *4–5. Because the only claims remaining were for damages for anticipatory breach of a Rule 11 agreement, certification of a class under Rule 42(b)(2) was not proper. *Id.* No similar circumstances are presented here, where the parties did not request certification of a class asserting only claims for damages. We overrule Rocker's sixth issue.

Rocker's fifth issue is also a complaint that the class should not have been certified under Rule 42(b)(2). Rocker contends that under *Lapray,* 135 S.W.3d at 667, "if damage claims are implicated, constitutional considerations will likely mandate such protections" as opt-out rights for class members.

■ Rule 42 does not require that members of a class certified under subsection (b)(2) be given the option to request exclusion from the class. *See* Tex.R. Civ. P. 42(c) (provisions regarding notice to class); *see also Lapray,* 135 S.W.3d at 664. As explained in *Lapray,* in a "mandatory" class under subsection (b)(2), members are not "entitled to an opportunity to exclude themselves from the class and the preclusive effect of any judgment by 'opting out' of the lawsuit." *Lapray,* 135 S.W.3d at 664. In contrast, when a class is certified under subsection (b)(3) of Rule 42 (if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy"), notice must be given to class members

"that the court will exclude from the class any member who requests exclusion, stating when and how the members may elect to be excluded." Tex.R. Civ. P. 42(c)(2)(B)(v).

The due process concerns raised by a mandatory class were thoroughly considered and discussed by both the Texas Supreme Court in *Lapray* and the United States Supreme Court in *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), and we will not repeat those discussions here. *See Lapray,* 135 S.W.3d at 667 ("we hold that trial courts considering certification under (b)(2) must consider, and due process may require, individual notice and opt-out rights to class members who seek monetary damages under any theory"); *Dukes,* 131 S.Ct. at 2557 ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."). In accordance with *Lapray,* to address due process concerns, the trial court was required to undertake a "rigorous analysis" of "cohesiveness" when certifying the (b)(2) settlement class. *See Lapray,* 135 S.W.3d at 671 ("If (b)(2) certification is sought, therefore, the trial court must rigorously analyze cohesiveness."). "Cohesiveness" is similar to the "predominance" inquiry under Rule 42(b)(3), but is more rigorous because in a mandatory class action, "the class member is essentially being coerced into participation." *Id.* (quoting John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation,* 100 Colum. L. Rev. 370, 435 (2000)).

The trial court's judgment does not mention cohesiveness; in the findings regarding the requirements of Rule 42, the judgment states only that "the Defendants have acted on grounds generally applicable to all Class Members, thereby making appropriate final injunctive or declaratory relief." Defendants did present argument regarding cohesiveness to the trial court in their response to Rocker's objections, and all appellees argue here that the settlement class is cohesive. Absent the extremely broad release in the Stipulation and Agreement of Settlement approved by the trial court, we would agree. *See In re Schering–Plough,* 2010 WL 1257722, at *9 (prospective settlement class is cohesive where "factual circumstances ... are the same with respect to members of the prospective class," and "the underlying factual circumstances revolve around Defendants' conduct towards prospective class members, specifically with respect to disclosures advanced and the circumstances surrounding the consummation of the Merger"). But despite the similarities regarding the injunctive relief sought by the class here, members of the class were also required to waive "any and all known and unknown claims (including Unknown Claims (as defined below)) *for damages,* injunctive relief *or any other remedy* against all Defendants in the Action." (Emphasis added). The releases expressly "extend to claims that the Texas Plaintiffs, all members of the Settlement Class, and Defendants do not know or suspect to exist at the time of the release, which, if known, might have affected the decision to enter into the release or to object or not to object to the Settlement ('Unknown Claims')." The releases also provided:

> The Texas Plaintiffs, on their own behalf and on behalf of the Settlement Class, and Defendants acknowledge that each of them and members of the Settlement Class may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is the intention of the Texas Plaintiffs, on their own behalf and on behalf of the Settlement Class, and De-

fendants to fully, finally and forever settle and release with prejudice any and all Released Claims, including any and all Unknown Claims, hereby known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.

Appellees argue that Rocker cannot identify any causes of action that could be asserted by an individual class member if opt-out rights were granted. But as the trial court noted at the hearing to approve the settlement, Defendants insisted on the broad releases of "unknown claims," providing in the settlement agreement that "the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part." As the trial court stated, "I guess one could ask, if no one can identify any damages, or—and there are no damages, then why are the defendants requesting a release?" Throughout their briefing, appellees refer to any claims for damages as "wholly untenable and speculative," yet they bargained for, and received, a waiver of all unknown claims, including those that would have been material to a class member in making the decision whether or not to object to the settlement. And appellees did not establish that any damages released were "incidental to the requested injunctive or declaratory relief," that is, "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief," that might be certified without opt-out rights. *See Dukes*, 131 S.Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998)).

Appellees cite to *Klein v. O'Neal, Inc.*, Civ. A. No. 7:03–CV–102–D, 2009 WL 1174638, at *3 (N.D.Tex. Apr. 29, 2009), for the proposition that settlement would not be possible without global releases. In *Klein*, however, the issue was whether a class member would be permitted to opt out after the deadline for doing so had passed. *See id.* at *1. Because notice and the opportunity to opt out had been granted, due process was not at issue. And in *In re Philadelphia Stock Exchange, Inc.*, 945 A.2d 1123, 1145–46 (Del.2008), also cited by appellees, although the court recognized that "[i]n any settlement of litigation, including class actions, a release of claims is an essential, bargained-for element, with the defendants customarily seeking a release with the broadest permissible scope," the court also recognized that "the scope of a release of claims cannot be limitless, if only because of substantive due process concerns." If appellees require a "limitless" release, then due process requires that class members be afforded the option to be excluded from the class. *See Lapray*, 135 S.W.3d at 668 ("In light of the [due process] concerns outlined above, we are reluctant to affirm a(b)(2) class that includes claims for damages without the concomitant protections afforded by notice and opt-out, and we cannot do so without knowing whether class members will be provided these protections. *This is particularly true when, as here, the class has disclaimed consequential damages.*") (emphasis added); *see also Compaq Computer Corp. v. Albanese*, 153 S.W.3d 254, 260 n. 3 (Tex.App.-Beaumont 2004, no pet.) ("Notice and opt-out rights will likely be required in a(b)(2) class where damage claims are implicated, *and damage claims are clearly implicated where they may be barred by the judgment.*") (emphasis added).[3] Denying con-

---

**3.** Appellees also rely on *Hall v. Pedernales*

*Electric Cooperative, Inc.*, 278 S.W.3d 536

stitutional protections constitutes an abuse of discretion. *Star–Telegram, Inc. v. Walker,* 834 S.W.2d 54, 55 (Tex.1992). We sustain Rocker's fifth issue.

### 4. Attorney's fees

In his first issue, Rocker contends the trial court erred in awarding attorney's fees in cash to class counsel. Rocker contends that because no portion of the benefits recovered for the class were in the form of cash, no attorney's fees could be awarded in cash. Rocker relies on Texas Rule of Civil Procedure 42(i)(2), which provides:

> If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class.

Subsection (i)(2) was added to Rule 42 in 2003 after the legislature enacted section 26.003(b) of the Texas Civil Practice and Remedies Code:

> (b) Rules adopted under this chapter must provide that in a class action, if any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney's fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class.

TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(b) (West 2008).

The question presented is whether the Supplemental Disclosures constitute "other noncash common benefits," as that term is used in both the statute and the rule. No Texas court has yet considered whether Section 26.003(b) and Rule 42(i)(2) apply to a class action settlement in which noncash declaratory or injunctive relief is obtained on behalf of the class. At least one commentator, cited by Rocker, believes the answer is yes:

> The coupon rule will likely deter attorneys from taking on class-action suits for nonmonetary awards, such as injunctive or declaratory relief. For example, in a case in which class members suing an environmental polluter obtain an injunction requiring cessation of pollution-causing activities, Rule 42(i)(2) literally requires the court to award attorney fees using the same noncash benefits. Moreover, if a class suing for declaratory relief on an insurance contract is awarded declaratory relief, Rule 42(i)(2) requires that the attorney-fee award must also be in the form of declaratory relief.

Michael Northrup, *Restrictions on Class–Action Attorney Fee Awards,* 46 S. TEX. L. REV. 953, 962–63 (2005) (footnotes omitted).

As the trial court recognized, the result of applying Rule 42(i)(2) and subsection 26.003(b) to cases involving "other noncash common benefits" is very harsh:

> THE COURT: Okay. What about the benefit that the class or the representative for the class has already obtained for the class? That being the disclosures. If I disallow this, then they will have done all that work for free and the defendants will have presumably negotiated the release of the disclosures,

(Tex.App.-Austin 2009, no pet.), in urging us to overrule Rocker's argument regarding opt-out rights. In *Hall,* the court certified a settlement class under Rule 42(b)(2). *Id.* at 543. The court's brief mention of opt-out rights, however, was in response to Hall's argument that the settlement was unconscionable, not that it denied class members due process. *See id.* at 548. Because the *Hall* court did not consider constitutional due process issues, *Hall* is distinguishable.

which was the subject of the lawsuit. They will have done that with no benefit. And it would seem that in the future, if the parties go into these kinds of negotiations knowing that the Court's not going to approve them, then it would seem to impact future settlements as well. *See also* Northrup, 46 S. TEX. L. REV. at 962–63 (noting the "harsh effect its plain language will have on cases involving requests for nonmonetary relief," but explaining that "this precise concern" was raised in the legislature; concluding, "[t]herefore, it appears that an attorney's sole source of payment in a class action suit seeking only nonmonetary relief is his or her fee agreement with the class representatives").

Plaintiffs [4] contend that Rule 42(i)(2) does not apply to the attorney's fees awarded by the trial court in this case. They argue that Rule 42(i)(2) applies only to "coupon settlements," and "only when there is a monetary 'recovery' of some kind for the class." Plaintiffs cite no authority for these propositions, but contend that the use of the word "recovered" in the statute and the rule "presumes that money or some other monetary benefit was lost by class members in the first place." They argue that because Rule 42(i)(2) provides that attorneys must be awarded fees "in the same proportion as the recovery the class receives," the rule must require "a monetary recovery of some kind" that "can be split proportionally in the first place." Plaintiffs contend that "Rocker's argument appears to be that since the Supplemental Disclosures cannot be split proportionally, Class Counsel gets nothing." Plaintiffs argue that the rules of statutory construction require courts to presume that a just and reasonable result

was intended by the legislature, as well as a result feasible of execution. *See* TEX. GOV'T CODE ANN. § 311.021(3), (4) (West 2005). Plaintiffs further contend that Rocker's argument construing "other non-cash common benefits" to include declaratory or injunctive relief "would lead to absurd results." *See Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex.2009) ("Unambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results.").

■■■■■ Where statutory text is clear, it is determinative of the legislature's intent. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437. The words chosen by the legislature "should be the surest guide to legislative intent." *Id.* (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex.1999)). Only when the words chosen by the Legislature are ambiguous do we " 'resort to rules of construction or extrinsic aids.' " *Id.* (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex.2007)). As the court explained in *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex.2006), "[o]rdinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on. This enacted language is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." If a term is not defined in the statute, we "construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d

---

**4.** The brief submitted by Defendants declined to "take a position on this issue," consistent with the terms of the parties' settlement agreement. The arguments referenced are made by Plaintiffs, whose attorney's fees are at issue.

619, 633 (Tex.2008) (citing Tex. Gov't Code Ann. § 311.011).

█ In determining legislative intent, we also look to the statute as a whole and not to its isolated provisions. *Dallas Cent. Appraisal Dist. v. Tech Data Corp.,* 930 S.W.2d 119, 122 (Tex.App.-Dallas 1996, writ denied). In section 26.003, the phrase "noncash common benefits" occurs in subsection (b). Section 26.003 is entitled "Attorney's Fees," and subsection (a) provides in part, "[i]f an award of attorney's fees is available under applicable substantive law, the rules adopted under this chapter must provide that the trial court shall use the Lodestar method to calculate the amount of attorney's fees to be awarded class counsel." Tex. Civ. Prac. & Rem.Code Ann. § 26.003(a); *see also* Tex.R. Civ. P. 42(i)(1) (court must determine lodestar figure in awarding attorney's fees). In context, subsection (b) appears in a section setting guidelines for the recovery of attorney's fees.

█ Further, we interpret a provision in the context of the entire law in which it is found. *Tech Data Corp.,* 930 S.W.2d at 122. Chapter 26 of the Civil Practice and Remedies Code, entitled "Class Actions," was "adopted as part of the sweeping tort reform implemented by House Bill 4"[5] in 2003. *See Molinet v. Kimbrell,* 356 S.W.3d 407, 417 (Tex.2011) (Lehrmann, J., dissenting) (discussing amendments to Chapter 33 of the Civil Practice and Remedies Code). In four sections, Chapter 26 requires the supreme court to adopt rules "for the fair and efficient resolution of class actions" in accordance with "the mandatory guidelines established by this chapter," provides for attorney's fees as discussed above, and also sets forth provisions regarding class actions involving the jurisdiction of a state agency. Tex. Civ.

Prac. & Rem.Code Ann. §§ 26.001, 26.002, 26.003, 26.051 (West 2008). Section 26.002, in particular, provides that the rules adopted by the supreme court "*must* comply with the mandatory guidelines established by this chapter." *Id.* § 26.002 (emphasis added.)

With these principles and context in mind, we examine the words used by the legislature in section 26.003(b). The word "benefits" is not defined in the statute, but appears twice in subsection 26.003(b), first in the phrase, "if any portion of the benefits recovered for the class," and then in the phrase, "coupons or other noncash benefits." Although "benefit" is sometimes used to describe a monetary payment (for example, unemployment "benefits"), here, modified by "noncash," "benefit" means an "advantage" or "good." Webster's Third New International Dictionary 204 (1981). We do not agree with Plaintiffs that section 26.003(b) is limited to coupon settlements. The plain language of the statute indicates otherwise, using the phrase "coupons *or* other noncash common benefits." "Other noncash benefits" is a separate term. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise ...." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

█ We also reject Plaintiffs' contention that the words "recovered" or "recovery" imply that some "monetary recovery" is required before section 26.003(b) applies. In fact, the section appears to be designed to apply particularly when there is no monetary recovery: if no cash is recovered for the class, attorney's fees may not be awarded in cash. Accepting Plaintiffs' contention would result in attor-

---

**5.** Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.01, 2003 Tex. Gen. Laws 847, 848.

neys receiving one hundred percent of their fees where the class recovers no cash, but only a fraction of their fees if the class recovers a small percentage of cash. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(b) ("the attorney's fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class"). For all of these reasons, we conclude that the phrase "other noncash common benefits," used in the statute and the rule, includes the relief obtained here on behalf of the class, that is, the Supplemental Disclosures.

■ Plaintiffs also argue they may recover their attorney's fees under the "common fund doctrine." As we explained in *City of Dallas v. Arnett,* 762 S.W.2d 942, 954 (Tex.App.-Dallas 1988, writ denied) (a class action), the common fund doctrine is an exception to the general rule that "absent a statutory or contractual basis for an award of attorney fees, each litigant must bear his own attorney fees." Plaintiffs argue that the common fund doctrine applies to "award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." *Mills v. Elec. Auto–Lite Co.,* 396 U.S. 375, 392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The common fund doctrine "is based on the principle that those receiving the benefits of the suit should bear their fair share of the expenses." *Arnett,* 762 S.W.2d at 954. As in section 26.003(b), discussions of the common fund doctrine often use the word "benefit." In *Mills,* the Court reasoned that "[t]o allow the others to obtain full *benefit* from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* (emphasis added). The common fund rule could be applied to prevent unjust enrichment even though the suit "has not yet produced, and may never produce, a monetary recovery from which the fees could be paid." *Id.* The Court recognized the "substantial *benefit*" to a corporation from a derivative suit "regardless of whether the *benefit* is pecuniary in nature." *Id.* at 395, 90 S.Ct. 616 (emphasis added).

In Texas, however, the common fund doctrine has been limited to cases in which the value of a pecuniary benefit to the class has been established. *Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 801 (Tex. 1974). The *Knebel* court stated, "[i]n our view, a pecuniary benefit to the class is required before there can be an award of attorney's fees." *Id.* The court discussed the common fund doctrine and its application by the United States Supreme Court in *Mills,* noting that "[t]he federal courts speak of 'substantial benefit' although not always in terms of pecuniary benefit." *See id.* at 801. In requiring a pecuniary benefit, the court reasoned, "[t]he essential basis of this suit for attorneys' fees is the claimed pecuniary benefit to the non-participating devisee-beneficiaries ...." *Id.* at 801. The *Knebel* court also concluded,

Finally, it is to be emphasized that the measure of a recovery of attorney's fees is necessarily determinable in the light of the nature and extent of the benefit accruing to the non-participating members of the class; and that parties purporting to have brought about a pecuniary benefit should bear the burden of establishing both its value and the resulting enrichment that calls for an equitable award in their behalf.

*Id.* at 802. Under *Knebel,* attorney's fees may not be recovered until the party seeking them proves the pecuniary value of the benefits achieved for the class. *Id.*

An approach similar to the court's in *Knebel* would be equitable here. A party seeking attorney's fees under section 26.003(b) or rule 42(i)(2) could "bear the

burden of establishing" the value of the pecuniary benefit to the class "and the resulting enrichment that calls for an equitable award in their behalf," *Knebel,* 518 S.W.2d at 802, to recover fees under the standards set forth in the statute and the rule. Section 26.003 as well as Rules 42(h) and (i) are guidelines for the recovery of fees by class counsel, and contemplate "an award of attorney's fees . . . available under substantive law." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(a). And .as the trial court noted, if attorney's fees are disallowed, then the class will have received a benefit "for free." Federal courts take a similar approach in determining attorney's fees under the Class Action Fairness Act when a proposed settlement in a class action provides for recovery of coupons. *See* 28 U.S.C.A. § 1712 (2006) (giving trial court discretion to receive expert testimony regarding the "actual value

to the class members" of coupons redeemed, and including provision allowing an award of attorney's fees "for obtaining equitable relief, including an injunction, if applicable"); *see also Radosti v. Envision EMI, LLC,* 760 F.Supp.2d 73, 77–79 (D.D.C.2011) (discussing recovery of attorney's fees under 28 U.S.C.A. § 1712). Further, appellees offered evidence of the benefits conferred by the Supplemental Disclosures on the class, although no evidence of pecuniary value was included. And the specific mention of "coupons" suggests that coupon settlements were the primary concern addressed in subsection 26.003(b). *See* Northrup, 46 S. TEX. L. REV. at 961 (discussing *Bloyed* court's scrutiny of coupon settlements and legislative action that followed).

■ However, application of the common fund doctrine may be limited by the express wording of section 26.003(b).[6]

---

6. In addition to the express wording of the statute, there is legislative history supporting our conclusion. In a series of recent opinions, however, the Texas Supreme Court has debated the role of legislative history in statutory interpretation. *See, e.g., Ojo v. Farmers Grp., Inc.,* 356 S.W.3d 421, 433 (Tex.2011) ("[e]ven when a statute is not ambiguous on its face, we can consider other factors to determine the Legislature's intent"); *Id.* at 439 (Willett, J., concurring) ("I accept a cautious (and non-villainous) role for extrinsic aids, including certain legislative history, where a nebulous statute is susceptible to varying interpretations, but our rule for unambiguous statutes is uncomplicated: 'Where text is clear, text is determinative,' making any foray into extratextual aids not just inadvisable but, as we have repeatedly derided it, 'inappropriate.' ") (footnotes omitted); *see also Molinet v. Kimbrell,* 356 S.W.3d 407, 414 (Tex.2011) ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute."); *Klein v. Hernandez,* 315 S.W.3d 1, 9 (Tex.2010) (Willett, J., concurring) ("Mining legislative minutiae to divine legislative intent may be commonplace, but as we have

held, relying on such materials is verboten where the statute itself is absolutely clear."). Applying this "cautious" approach to the use of legislative history, *see Alex Sheshunoff Mgmt. Servs., L.P.,* 209 S.W.3d at 652 & n. 4, we do note that in at least one committee hearing in the voluminous legislative history accompanying House Bill 4, the very concern raised by the trial judge and appellees here was discussed:

> MCCONNICO: Then going back . . . on Article 1 on the class actions . . . And also looking back at the very fro-front of that rule on, where it says, 26.00, Section 26.003(b). And then it says, rules adopted under this chapter must provide in a class action if any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits. Then we're go tie [sic] the attorney's fees awarded to, in the same proportion as the recovery for the class. We think that this presents some difficulty, because the problem is, generally, when class actions are settled, and say there is a coupon settlement, I know there's special problems with coupon settlements, there also is other relief granted to the class. *It could be in a declaratory relief, it's that the defendant is*

Even if counsel established the pecuniary benefit to the class, section 26.003(b) requires that attorney's fees "must be in cash and noncash amounts in the same proportion as the recovery for the class." Here, if there was no cash recovery for the class, fees could not be awarded in cash, regardless of the value of the benefit to the class. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(b). We may not apply an equitable doctrine to achieve a result prohibited by the statute. *See Entergy Gulf States, Inc.,* 282 S.W.3d at 433 ("Enforcing the law as written is a court's safest refuge in matters of statutory construction, and we should always refrain from rewriting text that lawmakers chose . . . ."); *see also*

*Schindler v. Schindler,* 119 S.W.3d 923, 933 (Tex.App.-Dallas 2003, pet. denied) (common fund rule did not apply to allow attorney's fees where probate code provided statutory basis for award of attorney's fees). We hold, therefore, that the trial court erred by awarding cash attorney fees in its judgment. We sustain appellant's first issue.

■ Because the interpretation of section 26.003(b) is a matter of first impression, however, and because of the equities noted, we may remand in the interest of justice. *See Caller–Times Pub. Co., Inc. v. Triad Commc'ns, Inc.,* 826 S.W.2d 576, 588 (Tex.1992) (remand in interest of justice

---

*going to stop a practice or they're gonna, going to do some other practice in the future or whatever. And, sometimes that other relief is a larger part of the recovery than the coupons or the cash. And we think it is unfair to the class counsel to say that all you're going to get is a proportion of the c-cash or of the coupon. I think, we should give the trial courts discretion and, of course, they're gonna be appealed, that's something that can be reviewed b[sic] the appellate court to see if the other things that are awarded to the class, are of benefit to the class, that should be a basis of the compensation also.*

RATLIFF: But are the courts gonna disagree if the counsel on both sides agree to some kind of sweetheart coupon deal, and-a-a-a-

MCCONNICO: Well, they have, you know, in the Supreme Court, you know, in the Bloyed opinion, Bloyed versus GMC, said we can't have it where the class counsel gets all he [sic] money, and then all of-and then the class itself gets a bunch of coupons that are basically worthless. And, what has happened since the Bloyed opinion, is that you've had attorneys that've gone out and they've been very aggressive objecting to class action settlements where the class only gets worthless coupons, and then the attorneys get all the cash. So, I think the system, and I understand your concern, and I think it is extremely legitimate concern. But, I think the system is correcting itself and is taking care of that problem.

RATLIFF: Well, do you wanna submit some wording, would be, I'll be glad to look at it. I, I wanna stop this, th-these sweetheart deals. (Inaudible)

MCCONNICO: Well, we will try to put some language in that enforces that, and I understand hat [sic] your concern is, it will help with that concern, *but, at the same time if here's a benefit, you know, in environmental cases this happens all the time where there might be an environmental practice stopped, but the class doesn't really get any cash, or gets very little cash. Then there isn't any impetus given to the plaintiffs counsel to take that case if he isn't going to get compensated.*

RATLIFF: *Yeah, well, I can understand the difference in injunctive relief of something like that—*

MCCONNICO: (Right.)

RATLIFF: —when, when it is, in fact, some kind of an instrument other than cash is what I'm concerned about.

MCCONNICO: Yes sir.

RATLIFF: All right.

MCCONNICO: We understand that.

Senate Committee Hearings on H.B. 4, 78th Leg., R.S. (May 5, 2003), reprinted in 3 The Legislative History of Tex. H.B. 4: The Medical Malpractice & Tort Reform Act of 2003, 1800–1802 (emphasis added). Section 26.003(b), however, was not changed to reflect these concerns. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 26.003(b).

appropriate where question presented was one of first impression under statute). In considering the Plaintiffs' request for attorney's fees at the hearing to approve the settlement agreement, the parties did not offer evidence from which the trial court could have determined the value—if any—and proportions of the noncash common benefits recovered for the class. On remand, the trial court may consider evidence and argument offered by the parties regarding recovery of attorney's fees within the constraints of section 26.003 and Rule 42(i).

CONCLUSION

We sustain Rocker's first and fifth issues. We reverse the portions of the trial court's judgment overruling Rocker's objections as to: (1) certification of a settlement class without granting to class members the option to request exclusion from the class, and (2) the award of attorney's fees. We remand the cause for further proceedings as to those issues. We overrule all remaining issues and affirm the trial court's judgment in all other respects.