**Affirmed as Modified and Opinion filed March 28, 2013.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-12-00320-CV

---

### SAM KAZMAN, Appellant,

### V.

### FRONTIER OIL CORPORATION, MICHAEL C. JENNINGS, DOUGLAS Y. BECH, ROBERT J. KOSTELNIK, JAMES H. LEE, PAUL B. LOYD, JR., FRANKLIN MYERS AND MICHAEL W. ROSE, ADAM WALKER, HOLLY CORPORATION AND NORTH ACQUISITION, INC., Appellees.

---

**On Appeal from the 113th District Court**
**Harris County**
**Trial Court Cause No. 2011-11451**

---

### O P I N I O N

Appellant Sam Kazman appeals the trial court's final judgment approving a class-action settlement of consolidated shareholder lawsuits challenging the merger of Frontier Oil Corporation and Holly Corporation. In the settlement, the class obtained injunctive relief in the form of additional disclosures regarding the

merger, and class counsel received attorney's fees of $612,500.00. On appeal, Kazman contends that the cash award of attorney's fees to class counsel violates Texas Rule of Civil Procedure 42(i)(2), which requires that "[i]f any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits," then the attorney fees awarded "must be in cash and noncash amounts in the same proportion as the recovery for the class." For the reasons explained below, we hold that, because the settlement class received only the "noncash common benefit" of injunctive relief and no cash, Rule 42(i)(2) precludes an award of attorney's fees in cash to class counsel. We therefore strike the attorney's fee award and affirm the trial court's judgment as modified.

## I

In February 2011, Frontier Oil Corporation and Holly Corporation[1] announced that they had entered into a merger agreement. Under the terms of the merger, Frontier shareholders were entitled to receive 0.4811 shares of Holly common stock in exchange for each share of Frontier common stock they owned just before the merger. All Frontier shareholders of record on a stated date were also entitled to receive a special dividend of $0.28 per share.

Several Frontier stockholders immediately challenged the merger by filing putative class-action lawsuits in Harris County against Frontier, Holly, and Frontier's board of directors. The lawsuits, which were eventually consolidated, included claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty in connection with the merger. In an amended petition, the named plaintiffs (the "class representatives") alleged that preliminary proxy statements

---

[1] North Acquisition, Inc., a wholly owned subsidiary of Holly, was also a party to the merger agreement. For simplicity, we will refer to Holly and North Acquisition collectively as "Holly."

2

filed with the Securities and Exchange Commission (SEC) failed to disclose to shareholders material information concerning the merger. The class representatives sought only injunctive and other equitable relief.

In April, the trial court appointed the law firms of Edison, McDowell & Hetherington, LLP, and Robbins Geller Rudman & Dowd, LLP, as interim class counsel. Counsel conducted discovery, including reviewing more than 12,000 pages of documents from Frontier and 8,000 pages from Holly, and deposing Frontier's chief executive officer and representatives of Frontier's two financial advisors.

After about two months, counsel for the class representatives and defendants engaged in negotiations that resulted in a "Memorandum of Understanding" that ultimately led to a proposed class-action settlement. The Memorandum of Understanding provided that, in exchange for broad releases for all defendants, Frontier and Holly would supplement their proxy statements by making additional disclosures regarding the merger in SEC filings.

According to Kazman, the additional disclosures, consisting of just over 1,300 words, were at best of "marginal" value, citing as examples:

- disclosing that "the merger agreement would include terms which were 'reciprocal and customary'";
- specifying that Holly's financial advisor, Morgan Stanley & Co. "considered, *inter alia*, a specific number of analysts (nine) publishing price targets for both Holly and Frontier, instead of an unspecified number of analysts";
- specifying that Deutsche Bank Securities, Inc., considered "a specific number of analysts (eleven) publishing price targets, instead of an unspecified number of such analysts";
- disclosing that Morgan Stanley & Co. "would not receive 'a portion' of its fees on announcement and a 'substantial portion' on completion, but would receive approximately 30% and 70% respectively";

3

- "wordsmithing" of the discounted cash flows analysis provided by Frontier's financial advisor, Credit Suisse Securities (USA), LLC; and
- including "a table summarizing information that appears elsewhere in the original proxy statement."

For their part, the class representatives maintain that the disclosures were "clearly material and allowed Frontier shareholders to make a fully informed decision regarding the disposition of their shares."[2]

The additional disclosures also mentioned the proposed settlement of the Harris County lawsuits, noting that "[t]he settlement will not affect the amount of merger consideration to be paid in the merger." At a special meeting of shareholders held shortly after the additional disclosures were made, the Frontier shareholders overwhelmingly voted to approve the merger.

The district court granted preliminary approval of the class-action settlement on October 7, 2011. Beginning in early November, notice was sent to the absent class members informing them of the pending settlement and hearing scheduled for January 6, 2012. In response, only three shareholders objected. These three shareholders held just 10,350 out of more than 106,750,000 Frontier shares outstanding at the time of the shareholder vote on the merger.

Kazman, one of the objecting shareholders, timely filed a notice of his objection to the proposed class-action settlement in December. The class representatives moved the trial court to approve the settlement over the objections of Kazman and the other unnamed class members. After holding the settlement

---

[2] The class representatives identify the following four specific categories of additional information disclosed: (1) the reasons Frontier's board approved the merger; (2) potential conflicts of interest of Frontier officers; (3) potential conflicts of interest suffered by the board's investment advisors; and (4) "inputs and outputs" that were used in the fairness opinion and thus went to the true value of the company. Although the class representatives cite to case law recognizing that such disclosures may be material, they do not cite to any of the actual disclosures.

hearing on January 6, the trial court approved the settlement in an order and final judgment signed that same day. The judgment reflected that the trial court found the settlement to be "in all respects, fair, reasonable and adequate to the Class, and in the best interest of the Class under Rule 42 of the Texas Rules of Civil Procedure." The trial court further found that the requested attorney's fees and expenses were "fair and reasonable."[3]

Kazman filed a motion for new trial and a request for findings of fact and conclusions of law, as well as a notice of past due findings of fact and conclusions of law. The trial court did not make findings and conclusions, and Kazman's motion for new trial was overruled by operation of law.

On appeal, Kazman raises five issues, contending that the trial court erred by finding: (1) Texas Rule of Civil Procedure 42(i)(2) does not preclude the cash award of attorney's fees; (2) the settlement was fair, reasonable, and adequate; (3) the notice of the proposed settlement was sufficient; (4) the class representatives fairly and adequately protected the interests of the class; and (5) class counsel was entitled to an award of attorney's fees without conducting a hearing or making findings of fact and conclusions of law regarding the reasonableness and necessity of the attorney's fees.[4] Because we conclude that Kazman's first issue is dispositive, we do not reach the other issues.

---

[3] The record does not include a transcript of the hearing.

[4] On appeal, Frontier takes no position as to Kazman's issues one and five concerning the award of attorney's fees. Frontier separately briefs the issue of whether the settlement agreement is enforceable even if the attorney's fees provision is held to be unenforceable.

## II

The trial court determines whether the substantive and procedural aspects of a class-action settlement are fair, adequate, and reasonable, and whether the settlement was the product of honest negotiations or of collusion. *See Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex. 1996). We review the trial court's approval of a class-action settlement and award of attorney's fees for abuse of discretion. *Id.*; *Johnson v. Scott*, 113 S.W.3d 366, 377 (Tex. App.—Beaumont 2003, pet. denied). In reviewing the trial court's judgment, we must not merely substitute our judgment for that of the trial court. *Bloyed*, 916 S.W.2d at 955. An abuse of discretion occurs if the trial court's decision is arbitrary or unreasonable, or is made without reference to any guiding principles, or if the trial court does not properly apply the law to the established facts. *Johnson*, 113 S.W.3d at 370.

We review issues of statutory construction de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, our primary objective is to give effect to the legislature's intent as expressed in the statute's language. *MCI Sales and Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010). We rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context, or such a construction leads to absurd results. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *City of Rockwall*, 246 S.W.3d at 625–26.

Moreover, we determine legislative intent from the statute as a whole and not from isolated portions. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). If the statutory language is unambiguous and yields only one reasonable interpretation, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003).

## III

## A

Class actions, especially settlement class actions, have long been recognized as creating the potential for conflict between the interests of the class members and the interests of class counsel in receiving an award of attorney's fees. *See Bloyed*, 916 S.W.2d at 952–56 (surveying concerns of courts and legal scholars and stating that "class actions are extraordinary proceedings with extraordinary potential for abuse"). In particular, courts have recognized that "'settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action.'" *Id*. at 955 (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 787–88 (3d Cir. 1995)).

In 2003, the legislature expressed its concern about this troubling aspect of the class-action procedure by instructing the Supreme Court of Texas to adopt rules to "provide for the fair and efficient resolution of class actions." *See* Tex. Civ. Prac. & Rem. Code § 26.001(a). The legislature also formulated the specific rules to be adopted:

> (a) If an award of attorney's fees is available under applicable substantive law, the rules adopted under this chapter must provide that the trial court shall use the Lodestar method to calculate the amount of attorney's fees to be awarded class counsel. The rules may give the trial court discretion to increase or decrease the fee award calculated by using the Lodestar method by no more than four times based on specified factors.

> (b) Rules adopted under this chapter must provide that in a class action, if any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney's fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class.

*Id.* § 26.003. Compliance with the legislature's guidelines was mandatory. *Id.* § 26.002.

As directed, the Supreme Court amended Rule 42 of the Texas Rules of Civil Procedure, the class-action rule, to add the following:

> **(i) Attorney's fees award.**
>
> (1) In awarding attorney fees, the court must first determine a lodestar figure by multiplying the number of ours reasonably worked times a reasonable hourly rate. The attorney fees award must be in the range of 25% to 400% of the lodestar figure. In making these determinations, the court must consider the factors specified in Rule 1.04(b), TEX. DISCIPLINARY R. PROF. CONDUCT.
>
> (2) *If any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits, the attorney fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class.*

Tex. R. Civ. P. 42(i) (emphasis added); *see also* Transcript of Tex. Supreme Court Advisory Comm. 10038 (Aug. 22, 2003).

At issue here is whether Rule 42(i)(2) applies to preclude the award of attorney's fees in cash to class counsel when the class received injunctive relief in the form of additional disclosures but no cash.

### B

In his first issue, Kazman contends that the trial court erred in concluding that the settlement did not violate Rule 42(i)(2) because the class was awarded only "the noncash common benefit of additional marginal disclosures" and no cash. According to Kazman, both the plain meaning of Rule 42 and the intent behind its enactment require that the class and its attorneys obtain the same ratio of cash-to-noncash benefits. Therefore, Kazman argues, the rule plainly provides that there can be no cash compensation for class counsel because class counsel negotiated no

cash benefits for the class.

In response, the class representatives contend that Rule 42(i)(2) was never intended to apply to suits seeking solely injunctive and other equitable relief, and argue that "such an interpretation would defy the principles of statutory construction." They note that the rule makes no mention of injunctive or other equitable relief, and assert that the legislative history preceding Rule 42(i)'s enactment demonstrates that such relief was never intended to be covered by the rule. The class representatives point to the following exchange to support their contention that the rule was intended to apply to coupon settlements only, not injunctive or other relief:

> [Steve McConnico, Texans for Civil Justice]: And then [section 26.003(b)] says, rules adopted under this chapter must provide in a class action if any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits. Then we're [going to] the attorney's fees awarded to, in the same proportion as the recovery for the class. We think that this presents some difficulty, because the problem is, generally, when class actions are settled, and say there is a coupon settlement, I know there's special problems with coupon settlements, there also is other relief generally granted to the class. It could be in declaratory relief, it's that the defendant is going to stop a practice or they're gonna, going to do some other practice in the future or whatever. And, sometimes that other relief is a larger part of the recovery than the coupons or the cash. And we think it is unfair to the class counsel to say that all you're going to get is a proportion of the c–cash or of the coupon. . . .
>
> [Sen. Ratliff]: Well, do you wanna submit some wording, would be, I'll be glad to look at it. I, I wanna stop this, th-these sweetheart deals. (Inaudible)
>
> [McConnico]: Well, we will try to put some language in that enforces that, and I understand hat [sic] your concern is, it will help with that concern, but, at the same time if here's a benefit, you know, *in environmental cases this happens all the time where there might be an environmental practice stopped, but the class doesn't really get*

9

*any cash, or gets very little cash.* Then there isn't any impetus given to the plaintiffs counsel to take that case if he's not gonna get compensated.

[Ratliff]: Yeah, well, *I can understand the difference in injunctive relief of something like that—*

[McConnico] (Right.)

[Ratliff]: —when, when it is, in fact, *some kind of an instrument* other than cash is what I'm concerned about.

[McConnico]: Yes, Sir.

[Ratliff]: All right.

[McConnico]: We understand that.

*See* Senate Committee Hearings on H.B. 4, 78th Leg., R.S. (May 5, 2003), reprinted in Capitol Research Services, *The Legislative History of Tex. H.B. 4: The Medical Malpractice & Tort Reform Act of 2003*, Vol. 3, pp. 1800–01 (emphasis added). The class representatives argue that this exchange makes clear that Rule 42(i) was intended to apply to "instruments"—such as coupons—and not injunctive or other equitable relief.

Additionally, the class representatives contend that Rule 42(i) does not apply because the rules of statutory construction provide that the legislature is presumed to intend a just and reasonable result and to favor the public interest over any private interest. *See* Tex. Gov't Code § 311.021. They argue that it would be unjust, unreasonable, and contrary to the public interest to deny a cash award of attorney's fees and expenses in a case in which class counsel sought only injunctive and other equitable relief to vindicate shareholders' rights, and ultimately obtained that relief through settlement.

Finally, the class representatives argue that this court should not follow the only other court that has considered the meaning of Rule 42(i)(2) in this context, because that case was at worst wrongly decided and at best readily distinguishable.

10

*See Rocker v. Centex Corp.*, 377 S.W.3d 907 (Tex. App.—Dallas 2012, pet. granted, judgm't vacated w.r.m.). *Rocker*, like this case, involved a class-action settlement of shareholder claims arising out of a merger in which the class received additional disclosures and class counsel received attorney's fees. *Id.* at 912. And, like this case, an objecting shareholder appealed the trial court's approval of the settlement, relying on Rule 42(i)(2) to argue that because no portion of the benefits recovered for the class were in cash, no attorney's fees could be awarded in cash. *Id.* at 920.

Addressing arguments similar to those made here, the *Rocker* court examined the words used in Rule 42(i)(2) and section 26.003(b), considered the statutory scheme as a whole, and surveyed the statute's legislative history before concluding that "the phrase 'other noncash common benefits,'used in the statute and the rule, includes the relief obtained here on behalf of the class, that is, the Supplemental Disclosures." *Id*. at 921–23. The class representatives attempt to distinguish *Rocker*, noting that the plaintiffs in that case originally sought both damages and injunctive relief. Moreover, the settlement in *Rocker* did not include an opt-out right for class members, which class counsel obtained in this case. Despite these differences, the class representatives request that, should this court follow *Rocker*, we remand to the trial court—as the *Rocker* court did—to permit them to present evidence and argument to establish that the relief obtained for shareholders has pecuniary value. *See id.* at 925–26.

In response, Kazman first challenges the class representatives' contention that Rule 42(i) applies only to coupons and other "instruments." Kazman argues that the language of Rule 42(i), which applies if "any portion of the benefits recovered for the class are in the form of coupons or other noncash common benefits," plainly applies not only to coupon settlements but also to any other

settlement in which noncash common benefits are awarded to the class. To apply the class representatives' logic, Kazman contends, would require this court to rewrite the rule to omit the phrase "or other noncash common benefits." Moreover, Kazman maintains, the rule requires that class counsel be awarded any fees in noncash amounts because "the attorney fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class." *See* Tex. R. Civ. P. 42(i)(2). To permit an award of cash attorney's fees when only injunctive, declaratory, or other noncash benefits are provided to a class, Kazman urges, would eviscerate the rule and defeat the legislature's intent.

Kazman also argues that the clear and unambiguous language of the rule precludes resorting to legislative history because the "truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see also Entergy Gulf States, Inc.*, 282 S.W.3d at 443. Even assuming resort to extra-textual considerations were appropriate, Kazman contends, during the legislative process the legislature explicitly considered, and rejected, the concern that class counsel for plaintiffs seeking injunctive and other equitable relief may not be entitled to recover fees:

> [Rep. Eiland]: Mr. Speaker, Members, this [amendment] is a little bit different. The bill says that attorney's fee will be the lesser of two things, 25% of the common fund or an hourly rate with the lodestar. Okay, sounds fine. That will be enough money for whoever takes on this class. However, what if it's only injunctive relief? . . . What if there is no money for the common benefit of the people? Then they get zero, because you would compare the amount of the common fund which is zero, or the low start of the hourly rate, which, let's say is $200,000. Well, the attorneys will get zero under this bill because of the lesser of zero and $200,000 of hourly rate is zero. And that's crazy. And so, I don't know how you can vote against not fixing this. . . .

12

* * *

[Rep. Nixon]: The one class I showed you, the class got — the class got nothing, the target defendant had to pay 3,000,000 into the scholarship and the attorneys got $3,500,000. What this is simply saying is look, we're not going to allow that anymore. *If you don't have a class fund, if there isn't something to give class members, you know, the lawyers are going to have to take their fee out of that, and if its [sic] not there, then there's not going to be a fee.*

* * *

[Eiland]: . . . Now I certainly understand Mr. Nixon's point that, I don't like these coupon settlements because those are collusion settlements between the defendants and a group of plaintiff lawyers. And the companies and the plaintiff lawyers do it, you have a coupon to the rest of us and the attorneys go home with the money, and that ain't right. But . . . the judge shouldn't approve the settlement and the judge shouldn't approve the fee. But what we're doing here is saying, number one, there's [sic] has to be a common fund. *You can't have just an equitable class action lawsuit with no money exchanging hands.* And that the judge can award 25% of the common benefit to the class to the attorneys and keep in mind, it says, "the lesser of the common fund or 25% of the common fund or an hourly rate." Fine, don't mess with that, *but [what if] there is no common fund? Then the attorneys get[] zero. And I think that's probably the intent of this bill, but that's not the right thing to do.* So I move that you vote "No" on the motion to table because this is goofy.

*See* House Second Reading on H.B. 4, 78th Leg., R.S. (March 19, 2003), reprinted in Capitol Research Services, *The Legislative History of Tex. H.B. 4: The Medical Malpractice & Tort Reform Act of 2003*, Vol. 1, pp. 538–40 (emphasis added) (noting motion to table amendment prevailed). Despite the concerns expressed in this exchange and elsewhere, section 26.003 was finally enacted without a provision for awarding attorney's fees to class counsel in situations in which the class counsel receives only injunctive or other equitable relief and no cash.

Lastly, in response to the class representatives' argument that *Rocker* is wrongly decided and distinguishable, Kazman argues that the factual distinctions

13

the class representatives point to were not relevant to the *Rocker* court's holding on the applicability of Rule 42(i)(2). Moreover, Kazman contends that the plain meaning of the rule makes remand inappropriate in this case.

C

We agree with Kazman that the plain language of Rule 42(i)(2) is unambiguous and governs the resolution of the attorney's fees issue. It is thus unnecessary to consult the legislative history cited by the parties. To ascertain the legislature's intent, we begin with the plain and common meaning of the statute's words. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). "Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). Our role is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results. *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). The Supreme Court of Texas has stated:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. . . . They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (quoting *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920)). When a statute's language is clear and unambiguous it is inappropriate to resort to the rules of construction or extrinsic aids to construe the language. *Molinet v. Kimbrell*, 356

14

S.W.d 407, 414 (Tex. 2011); *City of Rockwall*, 246 S.W.3d at 626; *see also Klein v. Hernandez*, 315 S.W.3d 1, 9 (Tex. 2010) (Willett, J., concurring) ("Mining legislative minutiae to divine legislative intent may be commonplace, but as we have held, relying on such materials is verboten where the statute itself is absolutely clear.").

By its plain terms, Rule 42(i)(2) applies "[i]f any portion of the *benefits* recovered for the class are in the form of coupons or *other noncash common benefits*." Tex. R. Civ. P. 42(i)(2). As no controlling definition of "benefits" is provided, we construe the rule's terms according to their plain and common meaning. *See City of Rockwall*, 246 S.W.3d at 625; *City of Sunset Valley*, 146 S.W.3d at 642. Black's Law Dictionary broadly defines "benefit" as an "[a]dvantage," "profit," "fruit," "privilege," "gain," or "interest." *See* BLACK'S LAW DICTIONARY 143 (5th ed. 1979); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (1981) (defining a "benefit" as an "advantage" or "good"). Likewise, Rule 42(i)(2) does not restrict "benefits" to pecuniary benefits or tangible "instruments" like coupons because the rule specifically instructs that "benefits" may take the form of coupons *or* "other noncash common benefits." Tex. R. Civ. P. 42(i)(2). Thus, we conclude that "benefits" may include any advantage, gain, or interest recovered by the class, including injunctive relief in the form of additional disclosures.

Kazman argues that because the class in this case recovered only the "noncash common benefit" of additional disclosures and no cash, Rule 42(i)(2) precludes an award of attorney's fees in cash to class counsel. *See id.* ("[T]he attorney fees awarded in the action must be in cash and noncash amounts in the same proportion as the recovery for the class."); *see also* Tex. Civ. Prac. & Rem. Code § 26.003(b) (same). This application of the rule is consistent with the

15

legislature's intent to promote the fair and efficient resolution of class actions and to curb abuses of the class-action procedure. *See* Tex. Civ. Prac. & Rem. Code § 26.001; *see also* Michael Northrup, *Restrictions on Class-Action Attorney-Fee Awards*, 46 S. TEX. L. REV. 953, 961 (2005) ("The adoption of the coupon rule evidences the legislature's dissatisfaction with the practice of leveraging the class-action device into settlements that provide insignificant recoveries (or effectively no recovery) to class members, while the class attorneys recover large cash awards.").

As the *Rocker* court noted, the legislature appears to have designed the rule "to apply particularly when there is no monetary recovery: if no cash is recovered for the class, attorney's fees may not be awarded in cash." *Rocker*, 377 S.W.3d at 922. The class representatives perceive this result as unfair and unreasonable when the only relief sought is injunctive or other equitable relief, but construing the rule as the class representatives prefer "would result in attorneys receiving one hundred percent of their fees where the class recovers no cash, but only a fraction of their fees if the class recovers a small percentage of cash." *Id.* at 923–24 (citing Tex. Civ. Prac. & Rem. Code § 26.003(b)). Such an outcome is plainly inconsistent with the legislature's intended result.

Considering the broad language of Rule 42(i)(2) and the statutory scheme from which it originated, we conclude as a matter of law that a class-action settlement in which the class recovers only injunctive or other equitable relief constitutes a recovery of "noncash common benefits" triggering the application of Rule 42(i)(2). Therefore, we hold that the trial court abused its discretion by failing to apply Rule 42(i)(2) to preclude the award of attorney's fees in cash to class counsel when it approved the class-action settlement which provided only "noncash common benefits" to the class, and we sustain Kazman's first issue.

D

Having concluded that class counsel was not entitled to attorney's fees, we next consider the effect of our holding on the remainder of the trial court's judgment approving the settlement. On appeal, Kazman does not challenge the settlement absent the attorney's fees award to class counsel.[5] We also note that the settlement agreement expressly makes any award of attorney's fees severable from the remainder of the agreement: "Court approval and consummation of the Settlement shall not in any way be conditioned on Court approval of Plaintiffs' counsel's fees." Although the settlement agreement also provides that if the attorney's fee award is reversed, the fees advanced will be returned to Frontier (or its successors or insurers), we note that in this case the class may potentially benefit indirectly from the return of any fees to Frontier because they are members of the class of shareholders.

In light of Kazman's concession that the settlement is otherwise fair, reasonable, and adequate, and the parties' agreement that the attorney-fee provision is severable from the remainder of the settlement agreement, it is unnecessary to reverse the entirety of the trial court's approval of the settlement and remand for the trial court to consider the fairness of the settlement without the attorney-fee award. We conclude that, on this record, we may modify the trial court's judgment to delete the award of attorney's fees to class counsel and affirm the judgment approving the remainder of the settlement agreement as modified. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 969 (9th Cir. 2009) (affirming approval of class settlement and reversing and remanding attorney-fee award); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 744 (3d Cir. 2001) (declining to

---

[5] Although Kazman argued in his briefing that the settlement was neither fair, reasonable, nor adequate even if the attorney-fee provision were stricken, Kazman's counsel abandoned that position at oral argument.

17

disturb settlement agreement not challenged on appeal while vacating and remanding attorney-fee award).

We also refuse the class representatives' request that we remand the case to allow the trial court to consider evidence and argument from the parties concerning the value, if any, and the proportions of the noncash common benefits recovered for the class, as the *Rocker* court did. *See Rocker*, 377 S.W.3d at 925–26. In *Rocker*, the court remanded the case in the interest of justice "[b]ecause the interpretation of section 26.003(b) is a matter of first impression," and to permit the parties to develop evidence supporting an equitable award of attorney's fees. *See id.* at 925–26. The *Rocker* court recognized, however, that "[w]e may not apply an equitable doctrine to achieve a result prohibited by the statute." *Id.* at 925 (citing *Entergy Gulf States, Inc.*, 282 S.W.3d at 443). In this case, there was no cash recovery for the class; therefore, Rule 42(i)(2) and its statutory precursor, section 26.003(b), prohibit awarding attorney's fees in cash to class counsel, regardless of the value of the benefit to the class. Therefore, presuming for the sake of argument that the class representatives otherwise would be entitled to remand, in this case remand for further proceedings would be futile. *See* Tex. R. App. P. 43.3.

\* \* \*

We sustain Kazman's first issue, modify the trial court's judgment to delete the award of attorney's fees to class counsel, and affirm the remainder of the judgment as modified.


/s/    Jeffrey V. Brown
        Justice


Panel consists of Justices Frost, Brown, and Busby.

18